Appellant, Mr. Zucker for the Appellant, Mr. Ricard for the Appellee. Good morning. Jonathan Zucker and Patricia Dawson on behalf of Appellant request five minutes for rebuttal. My inclination this morning is to address principally the ineffective assistance of counsel claims and, if time permits, to address the sufficiency of the conspiracy evidence. But note, in the context of this case, the government has already conceded that one of the ineffective assistance of counsel claims, the claim regarding plea proceedings, is already going to have to be remanded for further findings of fact in this case. Regarding the ineffective assistance of counsel at the trial level, it would seem to me that obviously the court has three options. One is to affirm based on the record. Second is to reverse based on the record. Third, if there's any question, to remand the case for further factual findings on the ineffective assistance claims. For the trial counsel, who would have been in the best position? Obviously, our position is that this case should be reversed and the conviction vacated. But if the court disagrees, given the closeness of the questions and the fact that this case is going to be remanded anyway for evidence or hearings or hearings before the trial court, we'd ask that that be the alternative the court selects. There's three bases for the ineffective assistance at trial that we've asserted. One is the failure to introduce a critical statement against penal interest that had been a critical factor in the first trial. The second is the failure of trial counsel to impeach with prior inconsistent statements of Detective Norris. And the third was failure to object to an improper closing argument and basically the misuse or abuse of 404B evidence, other crimes evidence. Regarding the statements against penal interest, the court is well aware. If the statement was against penal interest at the time it was made and if there were corroborating circumstances. In this case, counsel conceded an element that the government doesn't even dispute was present. He conceded that the declarant was unavailable. The declarant, of course, was the former co-defendant, brother of the defendant, who at a first trial had his statement was admitted that the drugs recovered, the second series of drugs in the car were his. How counsel overlooked that as a statement against penal interest, I'd say falls measurably below the standard of what would be expected. I mean, there's instances where trial counsel could be excused for failing to react quickly to an unanticipated event. But in this case, that was in the first trial and such a critical portion of the first trial. And the corroboration on that? How could you get better corroboration? The government prosecuted and convicted the man that the drugs were his. And by that, I mean the brother, Maurice Williams. How could there be more corroboration? Were there elements within the statement that were suspect and probably not true? Yes, there were. Of course, there was his claim that the drugs had been fronted to him by an unknown person on credit. Nobody would credit that. But that isn't what the defense was seeking to introduce here. What the defense was seeking to introduce and what the grovelment of the defense was, that the drugs in the house were more probably the brother who lived there, who had already been convicted and was a co-defendant at the first trial, and had admitted the drugs found in his car, the one-eighth kilo, were his. I'm not sure I have entirely focused on that because I thought the claim of Ronald Williams was that the probativeness of Maurice Williams' statement that the drugs were his and not Ronald's. So I thought that that required some kind of evidence to corroborate or support the notion that they were from a different source other than from the house. Is that not your position? Not exactly. Well, maybe we missed each other in the cross here. What I'm suggesting is that certainly the government had a viable theory that it could have been joint constructive possession, and they would have been able to pursue that. But the fact that the co-defendant admitted the drugs recovered from the car were his certainly would have buttressed the defense claim that these weren't my drugs, these were my brother's that lived there. Now, additionally, was there a statement that was introduced at the first trial by co-defendant Maurice Williams that his brother Ronald was not involved in drug distribution? Yes. And would the defense have liked to have had that in the second trial? Absolutely, we would have loved it. And should counsel have tried to introduce it under the doctrine of completeness? Probably. Would they have been successful? I doubt it. I mean, I'd love to have had it in, but I doubt you would have gotten it in. But the first part, that the drugs were mine, clearly was a statement against being more interested than should have come in. And there's no claim that the failure to renew the motion for acquittal based on insufficient evidence of conspiracy is not part of your claim of ineffective assistance? It was not one of the three enumerated bases, but there was in the brief a statement that if the court were to find that sufficiency of the evidence I thought that was your alternative argument when you were discussing the conspiracy. Yes. It's an alternative argument that if the standard would have been different under sufficiency versus manifest injustice, then by all means it's part of our argument. Yes, that is correct. But our position is that under either standard, conspiracy was not proven because of the lack of any proof of any interaction between the alleged conspirators. They were never in the same place at the same time according to the government's evidence, let alone was there ever any evidence of an agreement or joint activity, et cetera. It does seem remarkable that there's no communications between the two of them, no evidence of communications, but there is, you said there's no evidence whatsoever. There is strong circumstantial evidence that Maurice lived in the house and Ronald was seen frequently at the house and the drugs and the paraphernalia strongly consistent with possession with intent to distribute were in open view within the house and Ronald tried to steer the officers away from the table where there was a pile of drugs in it. If I could address those in order and I'll take the last one first. Regarding the government's claim that Ronald tried to steer the officers away from the table that had the contraband, that's true, but you have to place it in the context under which it arose. I understand you have a counter argument, but I'm just saying that Well, it's more than a counter argument. And the argument is the officer said, where are your keys? He said they're on the table. He sees them going to one table and says, no, not that table, they're at the other table. So he's complying with what the officers have requested. To say that his ulterior secret motive, his real motive, was to steer the officers away from the drugs, I think there's not a fair reading of the evidence in this case. Now, as far as any interactions between the brothers, I think your claim was that there was evidence of the drugs in plain view. I don't think there was. Most of it was secreted, though not particularly sophisticated. It was inside of a cup with a teddy bear on top of it. And I think there might have been some scales that were open. But what was absent was any showing of any interaction between the two brothers in connection with any drug distribution. Actually, any interaction whatsoever. So here's the government's best case, it seems to me, on that. They have your client sitting on the porch. One man comes up. There's conversation with your client. Your client gets up and goes in the house. And the man, I can't remember whether it was First Pounds or Baker, comes out with your client with drugs. All right, then another man comes, and the same scenario occurs. And while the officer doesn't know what happened in the house, the government puts on expert witness that says, this is the way drug conspiracies sometimes work. If we were just dealing with a sale, the sale that he was acquitted of, then certainly there was indicia of sales. I'm not quarreling with that. I understand that. What we don't have is any evidence of a conspiracy between the two brothers. So the government argues that the evidence shows he knew the house was being used as a stash for drugs. Who knew? Ronald Williams? The appellant? Yes. Okay. Well, it may have been used by his brother. It may not have been used by his brother. We are simply left to speculate. But the critical point is not whether or not drugs were being dealt out of that house. They were. There's no two ways about it. I was surprised, too, when the government tried to suggest that your client was trying to steer the officer away from the drugs, given how that all came up and your client wasn't arrested that night. So he was trying to go home and needed his keys. Actually, I think he was getting his keys because the officer asked to search his car and gave consent, and there were no drugs found on my client nor the car. I'm sorry for the interruption. No, no, no. So the problem, as the government points out, is you have to show this incredibly high standard, meet this incredibly high standard, manifest miscarriage of justice. I do, and I suggest, given the absence of evidence, it's present, but if you disagree with me on that, then I think that becomes part and parcel of the ineffective assistance claim and becomes the fourth category of the ineffective assistance that should be addressed on remand. And what's your understanding of the district court's statement in denying the motion at the close of the government's case where the district court says, well, your client had to get the drugs from somewhere? I guess the question is, obviously, everybody needs to get contraband from somewhere, but how do you infer that he has to get it from somewhere means that there is sufficient evidence to conclude he got it from his co-conspirator with whom there was absolutely no evidence that there was any interaction whatsoever, except that they both happened to have been born by the same woman and they both went to that house. Obviously, Maurice lived there, and I would say that the weight of the evidence was that Maurice was involved in the drug distribution, not Ronald. But given the absence, I mean, we're basically making speculation based on whole cloth. There's nothing indicating any interaction between the two. The only evidence of any interactions between the two, admittedly, was by the Ronald Williams' girlfriend, who said they didn't get along and they had a tension between them because of the mother. Was that overwhelming evidence of a lack of conspiracy? No. But there was simply no evidence of a conspiracy that was introduced. All right. So then you had the failure to appeal the speech. Right. Detective Norris with the prior inconsistent statements. And the closing argument. All right. Do my clients have further questions? Not me, colleagues. It's been a long morning. I'll take it. Sorry. I'll take it. Would you like to save the rest of your time? I've already run into it. Yes, we'll give you some time. I welcome an opportunity to respond to those two points if you have any direct questions. No, I don't. Okay. Thank you. I'd like to clarify one thing on the remand that the government agrees to regarding the uncommunicated plea offer. I understand your point about you're not conceding that it should be an evidentiary hearing, that we should leave that decision to the district court. But you suggest that because of the colloquy that went on between the district court and the defendant, just prior to the start of the second trial, that the actual plea offer, and whether that was communicated in a timely manner, is not part of the remand to which the government is agreeing? Well, I think that the entire plea issue can be explored on remand. All right. That's all. I just want to be clear. I think the government will have a strong argument that the plea offer was made. In other words, I don't want to see an argument on remand for the government that both the plea, in terms of whether it was communicated in a timely manner, and the failure to advise on sentencing exposure, that they aren't both properly to be addressed on remand. I think it's all intertwined, including the initial plea offer and the second plea offer. I should note, I sent Mr. Zucker a letter indicating that earlier in the case, we have a notation on our jacket saying that the defendant did want to plead, but he couldn't because his brother wouldn't. So it was a wired plea? Initially it was. Then there was a second plea offer after the first trial. So I think the defendant's intent with respect to the plea offer throughout the case would properly be explored in questioning whether or not he actually wanted to plead and whether he was misadvised. Thank you. May it please the Court, Stephen Ricard on behalf of the United States, I'll address the sufficiency first where Mr. Zucker left off. There was sufficient evidence that permitted the jury to reasonably infer an agreement from the circumstantial evidence, and I'd cite to six points in the record supporting that circumstantial evidence of an agreement. First of all, as Your Honor pointed out, there's the evidence that on September 16th appellant dealt from the porch, that he briefly went inside the house and that he sold both cocaine base in small zips and powder cocaine in unique heat seal envelopes to Mr. Pounds and Mr. Baker. There's then the evidence that on October 6th, I'm sorry, October 21st, Maurice Williams possessed a distribution quantity, a large quantity, one-eighth of a kilogram of cocaine hydrochloride in his car. There's no dispute that that was Maurice Williams was in constructive possession of that drug. That was the defense theory at trial. Hold on. I don't understand. No one saw what happened when Ronald went in the house. That's correct. All right. So the inference is that they went in the house and then the two men, Pound and Baker, came out with drugs. Yes. Because they were subsequently arrested. Now, as to the October 21st search of the car in which Maurice is, and he has all these drugs, what do you mean there was circumstantial evidence? I'm sorry. There was evidence that he was in constructive possession of the drugs where he was the sole driver of the car and the drugs were immediately next to him in the center console. Right. He was in actual possession of the drugs. Right. And what does that say about Ronald? It shows that both of them are involved in the distribution and possession with intent to distribute other drugs that are then found in the house. So if I go to visit, if I have a bad brother and I go to visit my mother who lives with my brother and I'm sitting on the porch and my brother drives away in his car, somehow that's evidence that I'm involved in the drugs that are found in my brother's car? I was citing the drugs in Maurice Williams' car as evidence that Maurice Williams is involved. Okay. I think Mr. Zucker has almost conceded now that there's sufficient evidence to infer that the acts that Ronald Williams committed on the porch were acts of distribution. No, I didn't hear that. I thought he was very careful. His brief is certainly very careful. And, in fact, he's claiming ineffective assistance because of the pretty noticeable inconsistency in Officer Norris' testimony. Officer Norris doesn't testify for long, and he has a really quite different story the first time, two separate men coming up from the street, interacting with Ronald Williams on the porch. One goes in, leaves, sometime later another comes, and the second time he describes it as the three of them all together. So there's some real credibility issue there, no? Well, I don't think that had the impeachment played out the way counsel envisions on appeal, that there would have been a real credibility issue there. The prior testimony would have come in that it's shown that Officer Norris was consistent in saying that he saw these specific two men, specific two men who were later stopped by other officers and found to be in possession of narcotics and that he then identified them. The order, there is an inconsistency in the order. I understand Your Honor's question to suggest you see it as very significant, but I'd submit that once it played out before the jury in light of all the other evidence, it wouldn't have significantly discredited the officer. Norris is the one really who places those two customers in connection with Ronald Williams, right? Yes, he places them going up to the porch and going inside with Ronald Williams. So if there's impeachment that he was confusing this with some other event, he doesn't really clearly remember, that could be potentially quite significant to the defense. If it suggested that he couldn't actually accurately identify the individuals, it might, but I don't think that I'd submit that it wouldn't have played out that way, that he couldn't actually identify the individual. I think it would have become clear that he simply was mistaken as to the order and that, in fact, there was evidence that he identified them in show-up identifications that day after they'd been stopped by other members and provided descriptions that other officers used to stop him. So I don't think it would have impeached him materially on the question of identity. I'm sorry, Mr. Ricardo, you had said you had six points, and then you got two of them out and we stopped you. Okay, so if you want to present the other four, that would be useful. I will go back to sufficiency if I could just say one more thing about the inconsistent testimony. I also think if you look at trial counsel's strategy with Officer Norris, it was not necessarily to try to discredit him, and it's a difficult thing to do to convince a jury that an officer is— On the trial strategy, this gets to my whole problem with why we're doing this here, which you're aware of, that I have that problem. Your brief on page 53 speculates about the tactics of the trial counsel. Your brief on page 58 speculates about the reasons why defense counsel might have done something. I know why you're doing that, and I'm not being critical. I'm just saying I don't see how we can resolve something like that in the first instance here, and I guess I don't know why the government pushes us to try to resolve it. And you know what I've said about this before. We're not a fact finder, and for us to resolve ineffective assistance claims, which require, in most cases, development of facts, seems totally misplaced to me. Well, I'll respond to that point. I would also, though, first like to say, even if I don't convince Your Honor on that point, I think that prejudice issue is something that can be resolved on the record, on the appellate record, to see whether or not, you know, as a harm— Sometimes, I agree, sometimes. But in your brief, I circled the parts where you talked about tactical matter, strategic choices, et cetera. And who knows without hearing from the trial counsel, which is the key evidence often of these ineffective assistance hearings. Well, I'd submit that Strickland suggests that, you know, there's a presumption reported to trial counsel that they acted in a strategic manner, and that if you can discern or the record supports that strategic decision, then there's no finding an effectiveness. I think that where, you know, you can't see from the record a clear path that trial counsel followed, then it's important to ask trial counsel on a remand, what were you actually thinking? But where the record shows a supportable inference, I think that's exactly what the presumption in Strickland means about presuming counsel. I guess. I mean, I won't berate you on this, but it just seems really unfair to defendants to try to resolve these ineffective assistance claims against them on appeal when there's this kind of question about why things were done. So I'll just leave it at that. You don't have to respond to that. Well, and I think going then pivoting to prejudice on each of these points, including the impeachment and the statements against penal interest, I do think that this Court on Appeal can find that there was no prejudice. The statement against penal interest, I heard counsel just, it appeared to me to be a concession, that, you know, the statement from that Ronald wasn't involved, that an appellant wasn't involved, would not have come in. And so then all we're talking about is Maurice's statement that his admission that the drugs in the car were his. And he didn't actually say the drugs in the car are mine. He initially said he didn't know anything about them. The detective then pressed him, and where did you get the cocaine? And he said from a guy in the southeast, you know, I didn't know him. I just met him through a lady. And so his statement there, and which is entirely separate from the statement that it was not in any way a materially exculpate appellant. It just was an incredible, largely incredible statement about where he'd gotten the drugs, which was inculpatory as to him as to the cocaine in the car, but didn't say anything about the drugs in the house. In fact, he claimed that the police weren't going to find any drugs in the house. So that statement, even if it had been introduced and developed at trial, would not have made a difference in the trial. I'd love to hear the rest of the evidence, that you had your six points for the sufficiency of the evidence on conspiracy. Thank you. And what I was trying to do with talking first about Ronald's actions and then about Maurice's actions, which were my first two points, was to say that both of those are then linked to what police find in the house. So the third point is the search warrant at the house shows, we have, of course, testimony that my third point was that Maurice lives at the house, and then my fourth point was that the search warrant at the house finds appellant on the porch. We have crack in the same kind of small zips just inside the door, which supports that that's where appellant was going when he went just inside the door a month earlier. We have the unusual, empty heat-sealed envelopes, which the officer- Yes, I didn't understand that at all. What did he mean? The heat-sealed? He said he'd never seen a heat-sealed envelope before. Yeah, so police use heat-sealed envelopes. We've heard testimony about heat-sealed envelopes plenty of times because police use them to seal the evidence, but the normal crack that's distributed on the street are in tiny fingernail-sized zips with a ziplock closed, whereas in this house- I've heard an awful lot of drug cases, all right, where they're talking about heat-sealed bags. That's why I was just so shocked, but at any rate, that's point four? Yes. All right. And that there was inside the house not one but two scales, and not only cocaine, which was linked to appellant's actions, but cocaine hydrochloride, which was the drug that Maurice had in the car. And we do have then the fifth point, appellant's consciousness of guilt in trying to keep the officer from looking at the keys on the table. I understand, Your Honor, expressed question about that, but I would submit that that was exactly the kind of thing that we asked the juries to decide in terms of what significance should be afforded to it. There was testimony from the officer that was very loud, that appellant was screaming when he said, and that the tone of appellant's voice elicited the officer's suspicion to immediately search that table. But I do think that that's a reasonable- I know we have to give the government the benefit of every inference, but that's a big leap, given the context of the statement. So let me be clear. Number one is the 916 sale. Number two is Maurice in the car with the drugs. Yes. Number three, Maurice lives at the house. Yes. Number four, the two brothers are linked because of the drugs seized in the house. The drugs and the tools of the trade. And the tools of the trade. The scale. The sealed envelope is five. And six is consciousness of guilt. I'm sorry. I included the heat-sealed envelope in what was seized in the house. My fifth point was the consciousness of guilt. Okay. And the sixth point was going to be the drug expert that links it all together. The expert. Okay. That says that this pattern is a common pattern. It's not an unusual pattern. And that we see this hand-to-hand transaction is often done from a home in order to conceal the deal from the public eye. That it's common to use scales. That we would expect to have eight balls being cut into small ziplocks inside the house. Was there any testimony that the government introduced that Ronald was acting as a lookout? I mean, he's sitting on the porch. They get up when the men come separately, Pounds and Baker, and they go in the house. And who knows what happened in the house. But you're saying you get the benefit, you, the government, get the benefit of the inference that there was an agreement that Ronald could sell drugs from Maurice's house? Yes. Whether Ronald was directly handing off the drugs or bringing the people inside in order to complete the transaction with an aiding and abetting the transaction. What was your strongest case? Well, I think that both the Jenkins and the Thorne case that we cite in our brief are strong. And one thing I noticed in reviewing those is I may not have made clear in my brief. I see in those cases Maurice in the role of Jenkins as the homeowner. And the appellant's role is actually the co-defendant in Jenkins, Stevens, who's distributing the drugs. And so the question is whether we can infer an agreement between the person who's dealing near the house and the tenant holder of the house. And so Maurice has actually been the tenant holder. And we can infer that he's involved because he's got the cocaine in his car. And we can infer that an appellant is involved because he's actually doing the distribution. Mr. Rickard, if you had obtained a conviction that the mother was a co-conspirator, do you think you could defend that against a sufficiency evidence challenge? No, I think that would be in the case of the final person in the Thorne case who was merely present when the police execute the search warrant. I think if we only have Ronald on the front porch, we would also have problems. I think that Ronald's concrete actions on the earlier occasion, on the September occasion, show that. Right, without Juan, I mean, you'd give a six, and I understand why you'd do that. But without Juan, number one in your list of six, you'd be in trouble.  Go ahead. Doesn't that put a lot of pressure on the Bailey issue, whether there was ineffective assistance in failing to gain admission of the prior acquittals? Well, that's not an ineffectiveness argument. That's preserved. And we've treated it as preserved. The judge ruled on it. Appellant's counsel asked for the acquittal evidence to come in. Counsel's articulated two theories of admission. The most powerful, I think, or would be the most powerful if it was permissible, would be that it shows that appellant didn't actually distribute drugs in September. And that's the theory of admissibility that's squarely precluded. Right, but it rebuts the inference or the implication that might have been made to the jury that he had been convicted. And that's the concern. And there was some discussion in the record before the jury on why there wasn't physical evidence anymore because it was destroyed after the cases were completed. And so there really is actually an affirmative basis on which the jury might have concluded, oh, he's been convicted of that conduct. I really don't think so when you read the entire record. Appellant's counsel stressed an opening and, in fact, elicited testimony on cross-examination that he was not arrested and that he didn't flee. And that, in fact, he remained in the area and reported to be arrested to his parole officer in February. I don't think anyone would think he was arrested on the earlier occasion. The trial judge was very conscientious of the issue and limited and kept out suggestions that there had been a prior trial and specifically instructed the jury to decide the case based on the evidence in this case. So the idea that because one piece of evidence had been destroyed and there was testimony that that defendant's case had ended, that they would infer that there had been a conviction as to appellant, I think is quite specific. But jurors have common sense. And, you know, there's been a trial for Maurice somewhere. I don't know that they knew that either. I think the trial judge actually did a very good job of keeping all of that information. No, I'm just saying jurors have common sense. You've got this guy in the car with all these drugs. He lives there in the house. They're all in the tools, et cetera. People are coming to his house to get drugs. I don't know that they would infer that Maurice's trial had already happened, that there's any suggestion that there had been. Well, what about the testimony that, you know, the case was concluded and the drugs had been destroyed? And I've argued in my brief that there was just fleeting references to each of those. Fleeting references. Okay. But I don't know. I don't think that the – I would dispute the initial argument that that would even suggest that the case had previously been tried, let alone convicted. And even if the jurors were to somehow reach that suggestion, I think they would infer that it was Mr. Now I'm going to make them Pounds or Baker, whichever one was actually destroyed. Right. This trial that had been completed. Okay. Anything further? Unless there are any further questions, we'd ask that the judgment of the district court. Thank you very much. Thank you. Counsel for Pellin. Thank you, Judge. To clarify one point that was implicit in your question, on October 21st there was no evidence that Ronald Williams was present when Maurice Williams left the house and was stopped later and drugs were recovered. The only evidence was that several hours later, after the police stopped Maurice, after they seized the drugs, after they took a videotaped statement of him where he made the admissions, they obtained a search warrant, and hours later they went back to execute that search warrant, and at that time Ronald Williams was then at the porch. So the nexus between the two is even further. The six points that the prosecution has elicited that they say support their conspiracy theory, the defense will concede. They go to support the theory that somebody was dealing drugs. There is nothing, all six of those points establish nothing in terms of an agreement between the two people who were convicted of conspiracy. There shows no agreement, no interaction between the two, no shared anything. So if we were here saying was there evidence that somebody was dealing drugs in the house, we'd lose. Why isn't it fatal to your case that the individuals who are arrested departing from the house, I mean if they had, let's say they had had marijuana on their person, fine. Two separate drug conspiracies and not the one, I'm sorry, individual drug charges. But here it's the same substance in the same packaging. So are we to infer from that that everyone who's dealing cocaine in the same neighborhood or even out of the same building at different times is involved in a conspiracy? It's the same pool of drugs and the guys are brothers. Same house. You know, same house. That starts to look... Suspicious. Is it beyond a reasonable doubt? We're not the jurors, though. We have to say could any reasonable juror have so concluded based on the evidence? I would say given the absence of any agreement between the two, any interaction between the two... There's circumstantial evidence of agreement, or that's the question, I guess. Well, I guess what is the circumstantial evidence that there's an agreement? There's circumstantial evidence that Ronald Williams may have distributed drugs on September 16th that he was ultimately acquitted from. Fourth, there is no evidence that came from or had anything to do with Maurice Williams or that Maurice Williams was present. There's no indication that between September 16th and October, whatever the date was, Ronald Williams or Maurice Williams was in that house. We don't know. Is it a reasonable inference because Maurice Williams lived there? Sure. Can we draw the same against Ronald Williams? No. So I would say there is no evidence that supports that conspiracy. And that's the gist on that point, that there is simply no interactions between the two. Anything further? Anything further? I don't think so. All right. Mr. Zucker, you were appointed by the court to represent the appellant in this case, and the court thanks you for your helpful assistance as always. Thank you.
judges: Rogers, Kavanaugh, Pillard